UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EDWARD BOZZO and PHILLIP KING, | Case No.: 5:12-CV-02542-EJD |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF GILROY, | |
| Defendant. | **[Re: Docket No. 34]** |

Plaintiffs Edward Bozzo and Phillip King (collectively, "Plaintiffs") bring this action for unpaid overtime wages against Defendant City of Gilroy ("Defendant" or "the City"). Presently before the court is Defendant's Motion for Summary Judgment. Docket No. 34. The Court has considered the moving papers and the oral arguments of Plaintiffs and Defendant presented at the hearing on September 20, 2013. For the reasons discussed below, the motion is GRANTED.

## I. BACKGROUND

Defendant is the City of Gilroy, located in Santa Clara County, California. Plaintiff King is employed in the Fire Department of the City of Gilroy as one of the Department's three Division Chiefs. Plaintiff Bozzo, a former Division Chief with the City of Gilroy, retired from the City on December 15, 2011. Plaintiffs were classified by the City as exempt from overtime under the Fair Labor Standards Act ("FLSA") because of their management job duties and because Plaintiffs received the same amount of pay each month.

In 2009, the City experienced significant revenue difficulties due to losses in the local, state, and national economy. The City expected these losses to continue for multiple years. The City requested to meet and confer with all bargaining units to address the City's financial crisis, and the City negotiated economic concessions with each unit.

Plaintiffs were part of the Gilroy Management Association ("GMA"), the City's bargaining unit for its management employees. The City negotiated a 9.23% reduction in pay for GMA employees in exchange for what the City claims was a bank of paid leave time, labeled "furlough time." This agreement (hereinafter "pay reduction plan") was effective from July 1, 2009 to June 30, 2011. Plaintiffs claim that the furlough days were treated differently from other paid time off such as vacation or sick days, and that the furlough days would be forfeited if not used within the same period as originally scheduled.

From July 1, 2009 to June 30, 2011 Plaintiffs received pay of at least $11,345.62 every month. In some of the months during this time period, Plaintiffs received additional pay for specific events.

## I. LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

1  If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## II.  DISCUSSION

The question presented in this case is whether the City's pay reduction plan caused Plaintiffs to lose their exempt status under the FLSA and its implementing regulations, thus entitling Plaintiffs to overtime pay.

### a.  The Fair Labor Standards Act

The FLSA requires that employers pay covered employees at least the federal minimum wage for all hours worked, and time and one-half for all hours worked in excess of forty hours in a single work week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). However, executive, professional, and administrative employees are exempt from the FLSA's minimum wage and overtime requirements. See 29 U.S.C. § 213 (describing exempt jobs). The Secretary of Labor is authorized to define by rule the scope of those exemptions. See id.

3

Case No.: 5:12-CV-02542-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Under the Secretary's rules, three tests must be satisfied for an employee to be considered an exempt executive, professional, or administrative employee: (1) the salary basis test, requiring that the employee receive "a predetermined amount" of compensation that is "not subject to reduction because of variations in the quality or quantity of the work performed" by the employee; (2) the salary level test, requiring that the employee earn at least $455 per week, equivalent to $23,600 per year; and (3) the duties test, which focuses on whether the employee performs the "primary duty" of an executive, professional or administrative employee. 29 C.F.R. §§ 541.602(a), 541.600(a), 541.700(a). The duties test and the salary level test are not at issue in this case.

For public sector employees, the Secretary has provided special criteria for exemption from the FLSA's overtime compensation requirements. A special exception from the salary basis test is provided for certain public sector pay systems that reduce the pay of otherwise-exempt employees for partial-day absences when paid leave is not used to cover such absences (29 C.F.R. § 541.710(a)), and for deductions due to budget-required furloughs (29 C.F.R. § 541.710(b)). The dispute in this case centers around § 541.710(b), which provides that:

> Deductions from the pay of an employee of a public agency for absences due to a budget-required furlough shall not disqualify the employee from being paid on a salary basis except in the workweek in which the furlough occurs and for which the employee's pay is accordingly reduced.

Plaintiffs' contention that the FLSA was violated is based solely on their interpretation of § 541.710(b).

**b. The parties' positions**

The parties disagree over the application of § 541.710(b) to the City's pay reduction plan. Plaintiffs take the position that § 541.710(b) rendered them non-exempt for the two years the City's pay reduction plan was in effect because § 541.710(b) disqualified them from being paid on a salary basis for each workweek throughout the two year period. Defendant argues that the salary basis test was satisfied because Plaintiffs continued to be paid the same amount throughout the two-year period and that § 541.710(b) has no effect when the salary basis test is otherwise satisfied.

4

Case No.: 5:12-CV-02542-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs insist that a factual dispute precluding summary judgment remains over whether the City's pay reduction plan was a "real (unpaid) furlough," or a "pretend (paid) furlough." The answer, Plaintiffs argue, will determine whether § 541.710(b) applies, because the regulation applies only to unpaid furloughs. Plaintiffs' opposition brief focuses much of its attention on the City's self-contradicting classification of the furlough days. The City claims it negotiated the 9.23% reduction of Plaintiffs' salaries in exchange for a bank of paid leave time (hereinafter "furlough days"), but Plaintiffs take the position that the furlough days were in fact unpaid because the City reported to the California Public Employees' Retirement System ("PERS") that Plaintiffs' furloughs were unpaid[1] and the furlough days were treated differently from other paid time off.[2]

The Court disagrees with Plaintiffs' conception of the case. The parties' dispute is more appropriately characterized as a legal dispute over the meaning of § 541.710(b). The terms and conditions of the City's plan have been adequately established and the facts in the record regarding Plaintiffs' pay are undisputed. Where the parties differ is in the interpretation of § 541.710(b) and its application to the facts of the City's plan and Plaintiffs' employment. Whether the furloughs are classified as paid or unpaid has no legal relevance because, as discussed below, the regulation does not dictate a different outcome either way.

### c. Section 541.710(b)

The parties state that this dispute presents an issue of first impression. Section 541.710 is rarely cited by the courts and none of the cases provide guidance as to the interpretation of subsection (b). Neither FLSA nor Title 29 of the Code of Federal Regulations provides a definition of the word "furlough." With no authoritative guidance to aid in determining how § 541.710(b) interacts with the City's pay reduction plan, the Court looks to the standards governing the interpretation of federal regulations.

---

[1] The payroll records submitted by the city to PERS establish that the City reported Plaintiffs' pre-furlough salary. This was done in order to comply with the PERS definition of a "mandatory furlough" – that a reduction in pay without any corresponding days off does not constitute a furlough. The City claims that the manner in which it reported Plaintiffs' salaries to PERS was done for Plaintiffs' benefit because it was necessary to avoid affecting Plaintiffs' pensions.

[2] Plaintiffs allege that the furlough days did not vest with the employee and were forfeited if not used within the same period as originally scheduled. There is some dispute between the parties as to the truth of this allegation, but this is an immaterial factual dispute that does not affect the outcome of the case.

As a general interpretative principle, "the plain meaning of a regulation governs." Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv., 307 F.3d 1214, 1219 (9th Cir. 2002). Other interpretative materials, such as the agency's own interpretation of the regulation, should not be considered when the regulation has a plain meaning. See id. (citing Christensen v. Harris County, 529 U.S. 576, 588 (2000)); see also Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning.")

The plain language of a regulation, however, will not control if "clearly expressed [administrative] intent is to the contrary or [if] such plain meaning would lead to absurd results." Dyer v. United States, 832 F.2d 1062, 1066 (9th Cir. 1987). In considering how definitely and in what form contrary administrative intent must be expressed, the Ninth Circuit has held that the Administrative Procedure Act requires that some indication of the regulatory intent that overcomes plain language must be referenced in the published notices that accompanied the rulemaking process. Safe Air For Everyone v. U.S. E.P.A., 488 F.3d 1088, 1098 (9th Cir. 2007).

The Court begins its analysis by looking to the language of § 541.710(b) and gives its words their ordinary and plain meaning. See United States v. TRW Rifle 7.62X51mm Caliber, 447 F.3d 686, 689 (9th Cir. 2006) ("[W]e follow the common practice of consulting dictionary definitions to clarify their ordinary meaning.")

Black's Law Dictionary defines "furlough" as "[a] leave of absence from military or other employment duty." FURLOUGH, Black's Law Dictionary (9th ed. 2009). Merriam-Webster's defines the noun "furlough" as "a leave of absence from duty granted esp. to a soldier; also : a document authorizing such a leave of absence." Merriam-Webster's Collegiate Dictionary 509 (11th ed. 2003).  Webster's defines the noun "furlough" as "a leave of absence granted to a governmental or institutional employee" or "a leave of absence granted by an employer to an employee; *esp* : a leave of absence granted at the employee's request" or "a temporary lack of employment due to economic conditions. Webster's Third New International Dictionary 923 (2002).

Plaintiffs contend that the City's pay reduction plan was a furlough and that § 541.710(b) operated to disqualify them from being paid on a salary basis, therefore rendering them non-exempt and entitled to overtime pay throughout the entire two year period. In other words, Plaintiffs' position is that, because the City's pay reduction plan was a furlough, a furlough "occurred" throughout the period of time the pay reduction plan was effective. However, the definitions above indicate that a furlough is a *leave of absence*, meaning that the employee is actually absent from work. It is too great a stretch of language to characterize the City's plan as a leave of absence when it was effective for a two year period during which Plaintiffs were employed, actively working, and receiving a fixed monthly salary. The plain language of the regulation does not support this position.[3]

In rejecting this interpretation of the regulation, however, the Court recognizes that the statute could reasonably be read as entitling Plaintiffs to overtime during the weeks in which Plaintiffs used one of their "furlough" days. That is, even if the regulation will not transform Plaintiffs from exempt to non-exempt employees for the entire two year period, perhaps the regulation rendered Plaintiffs non-exempt during each of the weeks in which a "furlough" day was taken. Under this reading of the regulation, Plaintiffs would have remained exempt during the weeks in which a furlough day was not taken.

This reading of the regulation would appear to comport with its plain meaning, which provides that the exemption is lost in the workweek in which the furlough day is taken and for which the employee's pay is accordingly reduced. The furlough days were provided in exchange for a reduction in pay, so it would not be a stretch to say that Plaintiffs' pay was "accordingly reduced" for the budget-required furlough.

Defendant offers a different interpretation, arguing that § 541.710(b) provides that the exemption is only lost when the salary is specifically reduced in direct connection with the furlough day. The employee's pay would be "accordingly reduced" by the furlough day only if the employee does not work on a particular day in the workweek and has their salary reduced for that

---

[3] The Court does not mean to imply that every leave of absence is a furlough. Rather, the Court interprets the word as requiring, at a minimum, that the employee be absent from work.

7
Case No.: 5:12-CV-02542-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

day. In other words, so long as the employee continued to be paid a consistent amount regardless of whether or not a furlough day was taken, the exemption would not be lost.

Faced with some ambiguity in the language of the regulation, the Court turns next to the relevant interpretative aids. Section 541.710 was originally labeled § 541.5d when it was promulgated as an Interim Final Rule by the Department of Labor. See 56 Fed. Reg. 45824 (Sept. 6, 1991). After a public comment period, the rule was revised and finalized. See 57 Fed. Reg. 37666 (Aug. 19, 1992). These documents provide the context in which the regulation should be understood, described below.

The FLSA has not always applied to public sector employees. In 1976, the Supreme Court considered the special nature of State and local governments and ruled that the FLSA's minimum wage and overtime pay provisions could not constitutionally be applied to State and local government employees. See Nat'l League of Cities v. Usery, 426 U.S. 833 (1976). However, in 1985 the Supreme Court reversed National League, reasoning that sufficient authority existed to apply the FLSA to state and local governments under the Commerce Clause of the Constitution and found that applying federal regulation based on the distinction between "traditional" and "nontraditional" governmental functions was unsound and unworkable. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985).

At the time of Garcia most public employers had in place compensation systems requiring all employees, regardless of how paid, to use accrued leave time or incur a reduction in pay for any absences from work. 57 Fed. Reg. 37666. Such Governmental payroll systems prohibited paying employees for time not actually worked that was not covered by accrued leave, regardless of whether the time not worked was greater or less than one full work-day. Id. Thus all public employees under such systems, including highly-compensated managers who otherwise would clearly be exempt from the overtime requirements, could be classified as non-salaried and thus non-exempt. Id. As a consequence, few public employers compensated employees in a manner that would satisfy the "on a salary basis" provision required by the regulations. Id.

With these concerns in mind, the Department of Labor promulgated the regulation now labeled § 541.710 as a special, limited exception from the requirement for payment "on a salary

8
Case No.: 5:12-CV-02542-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

basis" for certain public sector pay systems that reduce the pay of otherwise-exempt employees for partial-day absences when paid leave is not used to cover such absences, and for deductions due to budget-required furloughs. Id. The Department of Labor published the first version of § 541.710 as an Interim Final Rule and invited public comment. For reference, the Court reproduces the most relevant comments below.

The Department gave this response to a comment suggesting that the phrase "regular and recurring"[4] be clarified or deleted:

> The intent of this provision was to permit State and local governments facing severe financial difficulties which may require laying off employees to make decisions concerning how best to address such situations, including through use of furloughs, without having to also anticipate additional adverse financial consequences which would only aggravate their financial distress from a later determination under the Department's regulations that the furloughed employees became non-exempt and entitled to additional retroactive overtime pay simply because of deductions made due to the budget-required furloughs. We have determined from our reexamination of the regulatory language in light of the comments received that the reference to "regular and recurring" should be deleted as suggested. A public sector employer should not be penalized by the decision to spread individual furlough days out over an extended period so as to lessen the severity of the adverse financial impact on employees, in contrast to the potentially harsher result of being required to impose a single longer-term furlough of at least one week at one time. Appropriate modifications have accordingly been made in the final rule.

Id.

When asked by a commenter to clarify the meaning of the phrase "workweek in which such deductions occurred," the Department responded as such:

> One commenter questioned during which workweek a furloughed employee was to be treated as non-exempt—the week the furlough day was taken, the week the reduced pay

---

[4] The rule originally read: "Deductions from a public employee's pay that are not regular and recurring for absences due to a budget-required furlough shall not disqualify the employee from being paid "on a salary basis" except in the workweek in which such deductions occurred." 56 Fed. Reg. 45824.

9

Case No.: 5:12-CV-02542-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

check is received, or one of the weeks for which the pay check represents the employee's compensation? The exemption is lost in the workweek in which the furlough day is taken and for which the employee's pay is accordingly reduced. The language has been clarified in the final rule.

Id.

After careful consideration of the regulation's language, its relevant history, and the Department of Labor's reasons for promulgating § 541.710(b), the Court concludes that the regulation was intended only to allow public employers to continue treating their employees as exempt even when a furlough would cause a violation of the salary basis test, except in the workweek in which the furlough day is taken and for which the employee's pay is accordingly reduced. When the furlough does not cause the employee's pay to vary due to the quantity of work performed, § 541.710(b) has no effect.

This conclusion is best understood if one considers that § 541.710(b) was drafted in light of the fact that employees are normally classified either as exempt or non-exempt for the entire duration of their employment in a particular position. Section 541.710(b) is somewhat unusual in that it provides that normally exempt employees must be treated as non-exempt in particular workweeks. The Department of Labor was concerned that if a salaried employee was furloughed for a certain period of time and had their paycheck for that period of time reduced due to the furlough the employee would lose their exempt status entirely.

Thus, the type of furlough to which the Department of Labor intended the regulation to apply are furloughs that would disrupt an employee's salaried status, i.e., furloughs that cause variations in an employee's pay in a particular time period due to the quantity of work performed in that time period. The City's pay reduction plan did not cause variations in Plaintiffs' pay due to the quantity of work performed – Plaintiffs were paid the same amount each month regardless of the numbers of hours they worked in that month.

Furthermore, the purpose of § 541.710(b) is to give public employers greater flexibility in times of financial difficulty without the risk of unexpectedly needing to pay additional retroactive overtime. It would contradict the purpose of the regulation if it were read to award Plaintiffs

overtime in this case, effectively undoing much of the City's savings from implementing the negotiated salary reductions. Applying Plaintiffs' interpretation of the regulation to other City employees under similar agreements could in some cases result in awards of overtime pay greater than the reduction in salary those employees experienced. This surely is not the result the Department of Labor had in mind when promulgating a regulation intended to help public agencies implement budget-required furloughs.

No other grounds have been stated as a violation of the FLSA's overtime requirements. Having failed to show the existence of a genuine issue for trial, Plaintiffs have not satisfied their burden and Defendant is entitled to summary judgment.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. As this Order is dispositive of the case, the Court declines to rule on Defendant's Motion for Partial Summary Judgment regarding the issue of whether Defendant had established a 27 day extended work period for Plaintiffs under 29 U.S.C. § 207(k). Finally, Defendant's objections to the Declarations of Edward Bozzo, Linda Mussetter, and Carol L. Koenig, Docket No. 41, are overruled as the Court did not consider those documents in rendering this Order.

Judgment will be entered in favor of Defendant and the Clerk of Court shall close the file.

**IT IS SO ORDERED**

Dated: October 10, 2013

_____
EDWARD J. DAVILA
United States District Judge